UNITED STATES, Appellee,

v.

Matthew T. YUNK, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 99–0695.
Crim.App. No. 98–0228.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 8, 1999.

Decided June 29, 2000.

COX, S.J., announced the judgment of the Court and delivered an opinion in which CRAWFORD, C.J., joined. GIERKE, J., filed an opinion concurring in the result. SULLIVAN and EFFRON, JJ., each filed a dissenting opinion.

For Appellant: *Lieutenant John D. Holden*, JAGC, USNR (argued).

For Appellee: *Major Mark K. Jamison*, USMC (argued); *Commander Eugene E. Irvin*, JAGC, USN, and *Colonel Kevin M. Sandkuhler*, USMC (on brief).

Senior Judge COX announced the judgment of the Court and delivered an opinion in which Chief Judge CRAWFORD joined.

Appellant's contention is that the Court of Criminal Appeals, after finding that appellant had served 11 days of illegal pretrial confinement, erred in failing to reduce his sentence sufficiently to effect meaningful compensation.[1] On initial appeal before that court, appellant claimed, for the first time, that 11 of his 142 days of pretrial confinement were served under conditions so unnecessarily onerous as to constitute illegal pretrial punishment; and the court ultimately agreed.[2] Ap-

---

1. 52 MJ 436 (2000). Appellant does not contend that the Court of Criminal Appeals abused its discretion in undertaking to reassess sentence. *See United States v. Eversole*, 53 MJ 132 (2000).

2. Appellant did receive day-for-day credit for all 142 of his days spent in pretrial confinement,

including the 11 days served under unnecessarily onerous conditions. However, having not brought the matter to the attention of the trial court, appellant was not awarded any extra cred-

pellant contends that the court should have set aside his bad-conduct discharge; however, in reassessing sentence, the court declined to do so. We are satisfied that the court did not abuse its discretion in this regard, and we affirm.

Appellant was tried by a general-court martial, military judge alone, at Marine Corps Base, Camp Pendleton, California. Pursuant to a pretrial agreement, he pleaded guilty to using amphetamine/methamphetamine; possessing and distributing methamphetamine; and violating federal law by using a telephone to facilitate a drug distribution.[3] In exchange for the pleas, the Government did not go forward with the prosecution of other drug offenses also referred to that court-martial.

On August 19, 1997, the military judge sentenced appellant to reduction to E–1, total forfeitures, confinement for 30 months, and a bad-conduct discharge. The judge specifically awarded appellant day-for-day credit against sentence to confinement for the 142 days appellant served in pretrial confinement. On January 12, 1998, after considering several posttrial submissions by the defense, the convening authority approved the sentence and, in accordance with the pretrial agreement, suspended confinement in excess of 24 months.

After being granted at least eight motions for enlargement of time to file pleadings by the Court of Criminal Appeals, appellant, through counsel, filed an initial Brief and Assignment of Error with that court on January 6, 1999. On the same date, he moved to attach certain documents to the record.

The Government responded on March 5, 1999, after requesting and receiving a 1–month enlargement of time.

The Court of Criminal Appeals rendered its opinion on March 31, 1999. By that time, several things had changed. First, as a consequence of the credit he received for pretrial confinement and the good time credit he received in posttrial confinement, appellant had completed his service of confinement. Thus, there was no way the court could meaningfully shorten time served.

Second, by operation of Article 58a, UCMJ, 10 USC § 858a, and § 0152 of the Manual of the Judge Advocate General of the Navy, any sentence that included either a punitive discharge or confinement in excess of 3 months automatically reduced appellant's pay grade to E–1. Thus, unless the Court of Criminal Appeals were to *both* set aside appellant's punitive discharge *and* reduce his confinement (theoretically) to 3 months or less, there was no way the court could mitigate rank reduction.

Third, by operation of Article 58b, UCMJ, 10 USC § 858b, any sentence that included either confinement for more than 6 months or a punitive discharge automatically resulted in total forfeitures. Thus, unless the Court of Criminal Appeals were to *both* set aside appellant's punitive discharge *and* reduce his confinement (theoretically) to 6 months or less, there was no way the court could mitigate forfeitures.

In fact, what the Court of Criminal Appeals purported to do was compensate appellant for the 11 days by reducing his forfeitures from total to $600 pay per month for 30 months. However, because appellant's forfeitures were total by operation of Article 58b, the purported reduction had no positive effect for appellant.

What went wrong here? First, of course, was the brig policy that created the unreasonable conditions.[4] Apparently this policy came to light in another case out of that same jurisdiction, and portions of that record of trial, along with appellant's affidavit, were among the documents received by the Court of Criminal Appeals as appellate exhibits.

---

it for the 11 days. *See United States v. Suzuki,* 20 MJ 248 (CMA 1985).

3. Violations of Articles 112a and 134, Uniform Code of Military Justice, 10 USC §§ 912a and 934.

4. The precise contours of the policy are not here in issue, as the lower court held for appellant in this regard. Suffice it to say, the brig had a policy of unduly restrictive pretrial confinement for those facing lengthy potential punishments; and as the case stood at the charging stage, appellant readily fit that criterion.

On the other hand, as appellant notes in his affidavit dated January 5, 1999, "Until recently, I was unaware that the brig's conduct was improper. Had I known, I certainly would have informed my counsel and would have raised this issue at trial."

So what was the Court of Criminal Appeals to do with the case in that posture? Appellant was caught using and dealing drugs. In the pretrial agreement, he sought to cap his confinement at 24 months if he received a punitive discharge. In compensation for 11 days of unduly restrictive, but by no means barbaric, confinement, must the Court of Criminal Appeals have awarded appellant a sentence more appropriate to a short absence without leave?

Certainly the brig personnel, and possibly others, are to be faulted for their failure to conform to legal requirements. But the time to deal with this type of lapse was up front, at trial, when it could be appropriately remedied. After *United States v. Rexroat*, 38 MJ 292, 294 (CMA 1993), where we applied to the military *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)(magistrate's probable cause review more than 48 hours after arrest is presumptively untimely), such instances of undiscovered, unremedied, illegal pretrial confinement should be extremely rare.[5]

Where an accused has failed to bring illegal pretrial confinement conditions to the attention of a magistrate, as here, we have declined to invoke formal waiver. *United States v. Huffman*, 40 MJ 225, 227 (CMA 1994). Nevertheless, as the instant facts reveal, a change in circumstances from the time a matter should have been raised to a time much later often has a major impact on what arrows a given court or authority will have in its quiver.

Under the circumstances, we are satisfied that the Court of Criminal Appeals did not abuse its discretion in declining to set aside the punitive discharge or otherwise massively reduce the various sentence components. *See United States v. Jones*, 39 MJ 315, 317 (CMA 1994); *United States v. Dukes*, 5 MJ 71, 73 (CMA 1978). The relief appellant seeks (a product of his own prior inaction), in comparison with the discomfiture he may have endured for 11 days, does not reasonably appear to be proportionate or appropriate.[6]

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

GIERKE, Judge (concurring in the result):

I concur in the result and write separately only to note my adherence to the position I took in *United States v. Huffman*, 40 MJ 225, 228–29 (CMA 1994).

SULLIVAN, Judge (dissenting):

The granted issue in this case is:

WHETHER THE LOWER COURT ERRED IN FINDING ERROR AND THEN AWARDING WHAT AMOUNTED TO *SHAM RELIEF* BECAUSE THAT RELIEF IS EFFECTIVELY NULLIFIED BY THE AUTOMATIC FORFEITURE PROVISION OF ARTICLE 58b, UCMJ.

(Emphasis added.) Appellant appealed his convictions to the court below on the grounds of illegal pretrial punishment. In its decision, the lower court stated:

him to serve a few days in pay status at the back end of his confinement, and exactly under what circumstances the Court of Criminal Appeals could order the military to return him to a duty status from appellate leave. The fact is, appellant came to our Court asking for none of this. All he wanted was that his bad-conduct discharge be set aside. Our dissenting brothers want us to grant appellant a speculative remedy that he has not asked for, that has not been briefed, and that the opposing party has not had an opportunity to respond to. We decline to do so.

5. Appellant does not suggest that his pretrial confinement was not promptly reviewed by a magistrate, or that he complained to the magistrate about the conditions of his confinement.

6. We cannot entertain our dissenting Brothers' creative remedial proposals. Appellant neither on brief or in oral argument claimed that the Court of Criminal Appeals could "treat" undeferred punishment as deferred, and thus direct that dollars be put into appellant's pocket. Nor did appellant inform us just how much of a reduction in confinement would have allowed

We have carefully examined the record of trial, appellant's assignment of error that he was illegally punished prior to trial and the Government's response. We conclude that the appellant's assignment of error has merit *and he is entitled to relief....* We will take corrective action in our decretal paragraph.

Unpub. op. at 1–2 (emphasis added). In that decretal paragraph, the lower court focused its relief on the forfeiture portion of appellant's sentence and, in effect, reduced the forfeitures from $1,050 pay per month to $600 pay per month for 30 months. This resulted in apparent monetary relief to appellant of $13,500. However, the relief was illusory because, by operation of an automatic forfeiture of pay statute, Article 58b (an authority not mentioned in the lower court's opinion), appellant received no benefit from the court's order of relief.

Was this "sham relief"? Was the lower court not aware of Article 58b and its statutory effect on the forfeiture portion of appellant's sentence when the lower court gave its apparent reduction of $13,500 in forfeitures? Did the lower court make a mistake when it said it was giving relief to appellant, and yet it appears that the "relief" amounted to no relief? I would remand this case to the lower court. A remand would allow that court to directly confront these questions and to explain what actual "relief" was meant in its decision. *See United States v. Suzuki,* 14 MJ 491, 493 (CMA 1983), *aff'd in part and rev'd in part,* 20 MJ 248 (CMA 1985). Our system of justice is best served if unanswered questions like these are cleared up in the eyes of the appellant and the public. In addition, on remand, the lower court could also consider the well-reasoned relief proposed by my Brother, Judge Effron, in his excellent separate opinion which analyzes the type of appropriate relief which could be given to appellant.

EFFRON, Judge (dissenting):

I would set aside the decision below and remand the case to the Court of Criminal Appeals for consideration of the options for appropriate relief under Article 58b, Uniform Code of Military Justice, 10 USC § 858b. Appellant's request in this case is for "meaningful relief." *See United States v. Pierce,* 27 MJ 367 (CMA 1989). Although appellant has requested that his bad-conduct discharge be set aside, he has not taken an "all-or-nothing" position that forecloses other meaningful relief. The lead opinion takes too narrow a view of the law when it concludes that Article 58b prevents any relief in this case simply because it views setting aside the discharge as disproportionate and inappropriate.

If we were to remand this case, the court below could consider the option of treating the first 11 days of confinement as deferred. Under Article 58a, this would provide appellant modest, but meaningful relief in the form of 11 days' pay. Moreover, depending upon the relationship between the end of appellant's confinement and the expiration of his service obligation, it is possible that the lower court could reduce his approved confinement by 11 days so that the last 11 days of confinement served would be in a pay status. Upon careful briefing by the parties and review by the court below, there may well be other options that could provide appellant with meaningful but not disproportionate relief, in view of the conclusion of the court below that appellant was entitled to a remedy for 11 days of illegal pretrial confinement.